IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS J. GIORDANO | : | CIVIL ACTION |
| | : | |
| v. | : | No. 20-277 |
| | : | |
| UNIFIED JUDICIAL SYSTEM OF | : | |
| PENNSYLVANIA, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                                 **March 30, 2021**

Plaintiff Francis Giordano brings this employment action against Defendants the Unified Judicial System of Pennsylvania, the Superior Court of Pennsylvania, H. Geoffrey Moulton, and Christopher Nace. Giordano alleges he was discriminated against because of his disability and that retaliated against for filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). He claims Defendants violated the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), Title VII, the Rehabilitation Act, and the Pennsylvania Human Relations Act (PHRA). Defendants move to dismiss all but the Rehabilitation Act claims of the First Amended Complaint for lack of subject matter jurisdiction based on sovereign immunity and pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant the motion in part and dismiss Giordano's FMLA claims against the UJS and Superior Court without prejudice and with leave to amend. The Court will dismiss Giordano's PHRA claims with prejudice. The Court will deny the balance of the motion.

**BACKGROUND**[1]

Giordano is an adult citizen of the United States residing in Philadelphia, Pennsylvania. The Unified Judicial System of Pennsylvania (UJS) is a Pennsylvania government agency that serves as the unified state court system of the Commonwealth of Pennsylvania. H. Geoffrey Moulton is the Court Administrator of Pennsylvania and the head of the UJS. The Superior Court of Pennsylvania is one of two intermediary appellate courts in the Commonwealth of Pennsylvania, part of the UJS. Christopher Nace is the Executive Administrator of the Superior Court (since 2019) and the head of the Superior Court. Giordano worked for the Superior Court as a staff attorney from 1994 to 2019, with the title of Staff Attorney II from 2007 until he was terminated in 2019.

In 1991, Giordano was diagnosed with paraplegia which is a disability under the ADA. In 2006, the Pennsylvania Department of the Labor and Industry Office of Vocational Rehabilitation issued a Certification of Disability to Giordano. In 2016, Giordano was diagnosed with ulnar nerve damage in his left hand which is also a disability under the ADA. Paraplegia and ulnar nerve damage substantially limited Giordano's major life activities, including walking, caring for himself, performing manual tasks, standing, and bending.

On September 11, 2017, Giordano filed a charge of discrimination against the Superior Court with the EEOC. Giordano alleged the Superior Court discriminated against him based on his disability and sex and retaliated against him for requesting a reasonable accommodation when the Superior Court did not promote him to Staff Attorney III.

---

[1] In evaluating a motion to dismiss, the court must "accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citation omitted).

After his EEOC charge, Giordano alleges the UJS and Superior Court subjected him to a pattern of antagonism. On October 12, 2017, Giordano was asked to report to then Executive Administrator Michael DiPasquale's office. In the office, President Judge Gantman demanded that Giordano withdraw his EEOC charge. The Superior Court judges did not socialize with Giordano until he withdrew his charge in December 2017. In December 2018, President Judge Gantman accused Giordano of hacking into another staff attorney's computer. Giordano alleges that he never hacked into the computer and neither the UJS nor the Superior Court had evidence to support the allegation. In January 2019, Judge Alice Dubow screamed at Giordano in her chambers, asking why Giordano was filing rule to show cause orders, which Giordano had done for approximately 25 years.

On April 4, 2019, Giordano submitted a request for FMLA leave to Gia Lombardi, the Superior Court's Personnel Coordinator, due to a left sacral pressure ulcer secondary to Giordano's paraplegia. In a April 4, 2019, letter, Lombardi informed Giordano the Superior Court approved his FMLA leave request "for a period of up to 12 weeks beginning April 8, 2019." Giordano worked from home for approximately 10 hours per week while on FMLA leave. In a July 22, 2019, letter, Lombardi informed Giordano that his FMLA leave would expire on July 26, 2019, and requested he submit a reasonable accommodation request under the ADA. Giordano alleges that although he asked, Lombardi did not answer his question about how she arrived at the July 26, 2019, expiration date. On July 26, 2019, Giordano submitted a request for a reasonable accommodation to Lombardi because Giordano was unable to sit for an extended period of time due to his recovery of the wound related to his disability. The request was "lengthening the power cords for computer monitor and phone [and] reactivating remote access to computer so that

Giordano may work in a supine position" until Giordano's wound healed. Giordano never received a response to this request.

On July 30, 2019, at 5:00 a.m., Giordano returned to work as instructed by Philip Yoon, the Chief Staff Attorney. Giordano found an assignment on his desk. He completed and turned in the assignment timely. At approximately 8:30 a.m., Nace, the head of the Superior Court, asked Giordano to come to Nace's office. At approximately 8:40 a.m., when Giordano arrived at Nace's office he found Nace, Lombardi, Yoon, and Minami seated at a conference table. Nace informed Giordano that his employment was terminated and pushed a letter across the table. The letter was dated July 30, 2019 and stated Giordano was being terminated because of his failure to meet the necessary performance standards for his position. Giordano was escorted out of the building and told that he was permanently prohibited from reentering the building. Giordano alleges that, prior to July 30, 2019, neither Nace nor anyone else informed Giordano that his work performance was not meeting the standards for the Staff Attorney II position.

On January 15, 2020, Giordano filed a Complaint against the UJS, Superior Court, Moulton, and Nace. He alleges violations of the ADA, FMLA, Rehabilitation Act, Title VII, and PHRA. Defendants filed a motion to dismiss. Giordano filed an Amended Complaint on April 7, 2020, alleging the same violations. Giordano's ADA claims are brought against Moulton and Nace acting in their official capacity. The FMLA claims are brought against the UJS, Superior Court, and Nace in his individual capacity. The Rehabilitation Act claims are brought against the UJS and Superior Court. The Title VII claims are brought against the UJS and Superior Court. The PHRA claims are brought against the UJS, Superior Court, and Nace acting in his official capacity.

Defendants again filed a motion to dismiss the claims brought under the ADA, FMLA, Title VII, and PHRA on April 20, 2020. Defendants argue the ADA and FMLA claims must be

dismissed for lack of subject matter jurisdiction because the claims are barred by Eleventh Amendment sovereign immunity. They further argue the Title VII claims must be dismissed because Giordano does not state a claim for retaliation and Giordano is not an employee under Title VII. Finally, Defendants argue the PHRA claims are barred by separation of powers principles. The Court held a telephonic oral argument on the motion on February 22, 2021.

**DISCUSSION**

The Court will grant in part and deny in part the motion. The motion will be granted as to Giordano's FMLA claims against the UJS and Superior Court because Giordano should have instead named the responsible individuals acting in their official capacity. The motion will also be granted as to Giordano's PHRA claims because separation of powers principles bar PHRA claims against the judiciary. The motion will be denied as to the ADA claims because Giordano seeks only injunctive relief, and denied as to the Title VII claims because Giordano has sufficiently alleged a pattern of antagonism and that he was an employee under Title VII.

First, the Court will grant Defendants' motion to dismiss Giordano's FMLA claims (Count 4) against the UJS and the Superior Court because the First Amended Complaint names the UJS and Superior Court rather than the responsible officials acting in their official capacity. Giordano's FMLA claims are brought against the UJS, Superior Court, and Nace in his individual capacity. Defendants move to dismiss Giordano's FMLA claims against the UJS and Superior Court arguing the Court lacks subject matter jurisdiction because Eleventh Amendment immunity bars claims for damages against the UJS and the Superior Court. *See* Mot. to Dismiss 4, ECF No. 16. A defendant may move to dismiss an action if the court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A plaintiff then bears the burden of establishing subject matter jurisdiction. *See Hedges v. United States*, 404 F.3d 744, 750 (3d. Cir. 2005). In considering a Rule

12(b)(1) motion for dismissal, a "court may not presume the truthfulness of [the] plaintiff's allegations, but rather must 'evaluat[e] for itself the merits of [the] jurisdictional claims.'" *Id.* (citation omitted). If the court determines that it lacks subject matter jurisdiction, it must dismiss the claim pursuant to Federal Rule of Civil Procedure 12(h)(3). An assertion of Eleventh Amendment immunity is a challenge to a district court's subject-matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996). The Eleventh Amendment immunizes an unconsenting state from suits brought in federal court by its own citizens or citizens of another state unless Congress has abrogated the state's immunity. *See Benn v. First Judicial Dist.*, 426 F.3d 233, 238 (3d Cir. 2005). Suits seeking purely prospective relief against a state official for ongoing violations of federal law are not barred by the Eleventh Amendment. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908). A party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *See Christy v. Pennsylvania Turnpike Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994).

While the Eleventh Amendment does bar claims for damages against state entities, Giordano's FMLA claim only seeks damages against Nace in his individual capacity. *See* Am. Compl. 18, ECF No. 14. An FMLA claim for damages brought against an official in their individual capacity is permissible. *See Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012). Giordano's remaining FMLA claims seek only injunctive relief against the UJS and Superior Court. *See* Am. Compl. 18, ECF No. 14. However, Giordano's FMLA claim improperly named the UJS and the Superior Court rather than the responsible officials acting in their official capacity.[2] *See Banks v. Court of Common Pleas FJD*, 342 F. App'x.

---

[2] At oral argument, counsel for Giordano stated the FMLA claims (Count 4) in the First Amended Complaint should have named the individuals who acted in their official capacities rather than UJS

818, 821 n.1 (3d Cir. 2009) (finding the Eleventh Amendment barred FMLA claim for injunctive relief against a court entity because the claim was not raised against a state official). The Court will therefore dismiss Giordano's FMLA claims against the UJS and Superior Court in Count 4 without prejudice.[3] Because the pleading deficiency in this claim appears to be a mistake, the Court will grant leave to amend. *See Amoroso v. Buckts Cnty. Court of Common Pleas*, No. 13-0689, 2014 WL 3767000, at *6 (E.D. Pa. July 31, 2014) (granting plaintiff leave to amend FMLA claim to add a state official acting in their official capacity).

The Court will also dismiss Giordano's claims brought under the PHRA (Counts 9–11). After Giordano filed his First Amended Complaint, the Pennsylvania Supreme Court held separation of powers principles bar PHRA claims against the state judiciary. *See Renner v. Court of Common Pleas*, 234 A.3d 411, 426 (Pa. 2020). Giordano's claims against the UJS, Superior Court, and Nace in Counts 9–11 therefore must be dismissed.[4] Because this claim cannot be brought regardless of any amendment, the Court will dismiss this claim with prejudice and without leave to amend. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) (holding a court can deny leave to amend when the amendment would be futile).

---

and the Superior Court. Counsel requested leave to amend to assert the FMLA claims against Moulton and Nace in their official capacity.

[3] Defendants raise the "personal staff" exemption argument in moving to dismiss Giordano's FMLA claims, arguing Giordano was not an employee for purposes of the FMLA. The FMLA's definition of "personal staff" is drawn from the Fair Labor Standards Act (FLSA). *See* 29 C.F.R. § 825.102; 29 U.S.C. § 203(e). Courts interpret FLSA's "personal staff" exemption consistently with Title VII. *See Birch v. Cuyahoga Cnty. Prob. Court.*, 392 F.3d 151, 161 (6th Cir. 2004). For the same reasons stated in the Title VII analysis below, Giordano has sufficiently alleged he was an employee under the FMLA and the personal staff exemption does not apply to him.

[4] Counsel for Giordano conceded at the hearing on the motion that Giordano's PHRA claims must be dismissed.

The Court will deny Defendants' motion to dismiss Giordano's ADA claims under Rule 12(b)(1) because ADA claims seeking injunctive relief brought against Moulton and Nace in their official capacity are not barred by the Eleventh Amendment. The ADA claims (Counts 1–3) in Giordano's First Amended Complaint are brought only against Moulton and Nace acting in their official capacity. *See* Am. Compl. 10, 12, 14, ECF No. 14. Further, the claims seek only injunctive relief, not damages. *Id.* at 12–16. Suits for purely injunctive relief brought under the ADA against a state official acting in their official capacity are not barred by the Eleventh Amendment. *See Koslow v. Pennsylvania*, 302 F.3d 161, 179 (3d Cir. 2002) (holding the Eleventh Amendment does not bar a plaintiff's ability to bring ADA claim seeking prospective relief against state officials). Defendants cite *Benn v. First Judicial Dist.*, 426 F.3d 233 (3d Cir. 2005), for the proposition that the Eleventh Amendment bars ADA claims against Moulton and Nace acting in their official capacity. That case, however, addressed whether the entity was immune from a suit for *damages* brought by a former employee. *See id.* at 238. Giordano's ADA claims are brought against Moulton and Nace in their official capacity and seek only injunctive relief. The Eleventh Amendment does not bar such a claim.[5] *See Koslow*, 302 F. 3d at 179.

Finally, the Court will deny Defendants' motion to dismiss Giordano's Title VII claims for failure to state a claim under Rule 12(b)(6) because Giordano has adequately pleaded a retaliation claim under Title VII and he has plausibly alleged that the "personal staff" exemption does not apply. To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains

---

[5] At oral argument, counsel for Defendants agreed the Eleventh Amendment would not bar a claim for injunctive relief brought against Moulton and Nace in their official capacity.

something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678).

Giordano has sufficiently alleged a Title VII retaliation claim. To state a claim for retaliation under Title VII, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007) (citation omitted). Giordano alleges he filed an EEOC charge against the Superior Court in September 2017, which the parties agree is a protected activity under Title VII. Giordano also alleges an adverse employment action: his July 30, 2019, termination. The question is thus whether Giordano has sufficiently pleaded a causal connection between the protected activity and the adverse employment action.

Defendants argue the gap in time between the protected activity and the adverse action (almost two years) makes the connection too attenuated to support a causal connection. *See* Mot. to Dismiss 10, ECF No. 16. Though temporal proximity is one means by which a Court can infer a causal connection, "where there is a lack of temporal proximity, circumstantial evidence of a pattern of antagonism following the protected conduct can also give rise to the inference." *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997) (quotation marks and citation omitted). The relevant inquiry is whether certain incidents, taken together, permit an inference of a pattern of antagonism. *See Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 303 (3d Cir. 2007) ("[I]t

matters not . . . whether each piece of evidence of antagonistic conduct is alone sufficient to support an inference of causation, so long as the evidence permits such an inference when considered collectively.").

Giordano alleges several incidents of antagonism between his EEOC charge and his termination. Following his filing of an EEOC charge, Giordano alleges President Judge Gantman demanded that he withdraw the charge on October 12, 2017. *See* Am. Compl. ¶ 157, ECF No. 14. He further alleges the Superior Court judges did not socialize with him until he withdrew his charge in 2017. *See id.* He alleges he was falsely accused by the Executive Administrator of hacking into a coworker's computer in December 2018. *See id.* The next month, Judge Dubow screamed at him in her chambers asking why he was filing rule to show cause orders, a task he had done for around 25 years. *See id.* Giordano then went on FMLA leave in April 2019, and his employment was terminated upon returning to work on July 30, 2019. Considering these actions as a whole, Giordano has sufficiently pleaded a pattern of antagonism at this stage, which allows for the inference of a causal connection between the protected activity and the adverse employment action. *See Marra*, 497 F.3d at 305 (finding sufficient causal connection based on a pattern of antagonism during two-year period between protected activity and adverse action).

Although Defendants further argue Giordano was not an employee subject to Title VII because he was a confidential employee fitting within the narrow "personal staff" exemption, the Court disagrees. An employee under Title VII is:

> an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. § 2000e(f). This "personal staff" exemption is "to be narrowly construed." *Conley v. City of Erie*, 521 F. Supp. 2d 448, 452 (W.D. Pa. 2007) (citation omitted). The exemption "should apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official." *Marburger v. Upper Hanover Twp.*, 225 F. Supp. 2d 503, 512 (E.D. Pa. 2002) (quoting *Owens v. Rush*, 454 F.2d 1370, 1375 (10th Cir. 1981)).

The Third Circuit has not established standards for determining whether an employee falls within the exemption. District courts within the Third Circuit have previously applied a six-factor analysis set forth in *Teneyuca v. Bexar County*, 767 F.2d 148 (5th Cir. 1985). *See*, *e.g.*, *Gupta v. First Judicial Dist.*, 759 F. Supp. 2d 564, 568–69 (E.D. Pa. 2010). These factors are:

(1) Whether the elected official has plenary powers of appointment and removal,

(2) Whether the person in the position at issue is personally accountable to only that elected official,

(3) Whether the person in the position at issue represents the elected official in the eyes of the public,

(4) Whether the elected official exercises a considerable amount of control over the position,

(5) The level of the position within the organization's chain of command, and

(6) The actual intimacy of the working relationship between the elected official and the person filling the position.

*Teneyuca*, 767 F.2d at 151.[6] Analysis of the factors are "flexible and of a highly factual nature, with the objective of determining whether the employee held an intimate and sensitive position of trust." *Gupta*, 759 F. Supp. at 569 (quotation marks and citation omitted).

---

[6] Both parties rely on these factors in their briefing. In the absence of precedential authority to the contrary, the Court is persuaded to adopt this six-factor analysis here.

Giordano has sufficiently alleged that was an employee under Title VII and not subject to the "personal staff" exemption. As a preliminary matter, judges are elected officials in Pennsylvania. Giordano worked for Central Legal Staff and owed "a duty of confidentiality to the judges of the Superior Court." 210 Pa. Code § 65.9. Giordano alleged that the person atop his chain of command was President Judge John A. Panella. *See* Am. Compl. ¶ 60, ECF No. 14. It is therefore plausible that the first factor—the elected official has plenary powers of appointment and removal—weighs in favor of Giordano fitting within the exemption.

The remaining factors, however, weigh against Giordano falling within the exemption. For the second factor, Giordano reported to Michele Grimmig, the Civil Supervisor, and was not assigned to any particular judge. *See id.* He has therefore alleged that he was not "accountable to only [an] elected official." For the same reason, Giordano did not represent any elected official in the eyes of the public. As for the remaining three factors, Giordano's position as Staff Attorney II was too removed from the Superior Court judges to constitute "personal staff." Giordano reported to Grimmig, who reported to Catherine Minami, the Deputy Chief Staff Attorney, who reported to Philip Yoon, the Chief Staff Attorney, who reported to Nace, who reported to Judge Panella. *See id.* The attenuated chain of command makes it unlikely any elected official had a "considerable amount of control" over Giordano's position and belies any "intimacy" in the working relationship. Based on the *Teneyuca* factors and Giordano's allegations in the Amended Complaint, Giordano has sufficiently alleged that he did not fit within the "personal staff" exemption.[7] While further

---

[7] Defendants point to *Gupta v. First Judicial Dist.*, 759 F. Supp. 2d 564 (E.D. Pa. 2010) as analogous to this case. In *Gupta*, the court found a judge's personal law clerk fit within the "personal staff" exemption. In analyzing the six factors, the court relied on facts such as the clerk worked exclusively with the judge, was personally accountable to the judge, answered the phone in chambers, was supervised solely by the judge, and reported directly to the judge. *See id.* at 570–72. None of those facts apply to Giordano. Although Giordano's job responsibilities as alleged in

discovery may shed light on the nature of Giordano's relationship with any particular judge, Giordano has sufficiently pleaded he was an employee under Title VII at this stage.

**CONCLUSION**

In conclusion, the Court will grant in part and deny in part Defendants' motion to dismiss. The motion will be granted insofar as the FMLA claims against the UJS and Superior Court will be dismissed without prejudice because Giordano alleged the claims against the court entities rather than an individual officer in their official capacity. The PHRA claims will also be dismissed with prejudice because the Pennsylvania Supreme Court has barred these claims against court entities. The balance of the motion will be denied because Giordano's ADA claims properly seek only injunctive relief against Moulton and Nace acting in their official capacity, and Giordano has adequately pleaded a pattern of antagonism and that he is an employee under Title VII.

An appropriate order follows.

BY THE COURT:


 /s/ Juan R. Sánchez 
Juan R. Sánchez, C.J.

---

the First Amended Complaint are somewhat analogous to those of a law clerk, *see* Am. Compl. ¶ 29, that allegation is not itself sufficient to fit within the narrow "personal staff" exemption.